IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Hilda Renee Tribble-Toney, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:15-1070-TLW |
| ) | |
| Palmetto Health Baptist Hospital, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**ORDER**

The Plaintiff, Angela Davis ("Plaintiff"), filed this action against her former employer, the

Defendant, Palmetto Health Baptist Hospital ("Defendant" or "Palmetto Health"), alleging claims

of race discrimination based on wrongful discharge and hostile work environment in violation of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, et seq. ("Title VII"), and

intentional infliction of emotional distress.  (Doc. #1).[1]

Defendant filed a Motion for Summary Judgment on February 22, 2016. (Doc. #20).

Plaintiff filed a response in opposition on March 28, 2016 (Doc. #23), to which Defendant replied

on April 7, 2016 (Doc. #24).  This matter is now before the Court for review of the Report and

Recommendation ("the Report") filed on July 14, 2016 by the United States Magistrate Judge to

whom this case was assigned pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2),

(D.S.C.).  (Doc. #25).  In the Report, the Magistrate Judge recommends that this Court grant

---

[1] On April 6, 2015, this Court entered an Order granting in part Defendant's partial motion to dismiss (Doc. #4), and dismissed Plaintiff's age discrimination claim, without opposition or objection from Plaintiff, based on failure to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SHAC").  (Doc. #7).  Plaintiff filed a response (Doc. #6) to Defendant's partial motion indicating that she did not oppose the dismissal of her age discrimination claim.

summary judgment in favor of Defendant as to each of Plaintiff's claims, and dismiss this case in its entirety. (Doc. #25). More specifically, as to Plaintiff's hostile work environment claim, the Magistrate Judge found that a question of material fact exists as to whether the offensive statements and other conduct of Plaintiff's direct supervisor were sufficiently severe and pervasive to constitute a hostile work environment in violation of Title VII. (Doc. #25 at12). However, the Report ultimately recommended that this Court grant summary judgment in favor of Defendant on that claim based on a finding that Plaintiff did not establish that the supervisor's conduct was imputable to Defendant. (See Doc. #25 at 13). Plaintiff filed timely objections to the Report on July 31, 2016 (Doc. #26), to which Defendant replied on August 18, 2016 (Doc. #27). Defendant's motion is now ripe for disposition.

This Court is charged with conducting a de novo review of any portion of the Magistrate Judge's Report to which a specific objection is registered, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636. In conducting this review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Hous. Auth. of City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

This Court has carefully reviewed the Report, Plaintiff's objections thereto, Defendant's reply, as well as the memoranda and record in accordance with the standard set forth in Wallace. After careful consideration, the Court accepts in part and rejects in part the Report and Recommendation, for the reasons and to the extent outlined herein.  (Doc. #42).  Specifically, the Court accepts the Magistrate Judge's recommendation that this Court grant summary judgment in favor of Defendant as to Plaintiff's claims of: (1) wrongful discharge in violation of Title VII; and (2) intentional infliction of emotional distress.  However, for the reasons discussed below, the Court declines to accept the Report's recommendation to grant summary judgment in favor of Defendant on Plaintiff's claim for hostile work environment in violation of Title VII.[2]

As noted, after a careful de novo review, this Court finds that the Report accurately summarizes the applicable law with regard to Plaintiff's claim for wrongful discharge and Plaintiff's claim for intentional infliction of emotional distress under South Carolina law. Therefore, for the reasons articulated by the Magistrate Judge, Defendant is entitled to summary judgment on those two claims.    However, the Court declines to accept the Report's recommendation as to Plaintiff's claim for hostile work environment, and instead finds that genuine issues of material fact preclude the grant of summary judgment in favor of Defendant on that claim.  Although the Magistrate Judge concluded that an issue of fact existed with regard to whether the conduct of Plaintiff's direct supervisor was sufficiently severe and pervasive to constitute a hostile work environment under Title VII, the Report recommends granting summary

---

[2] Defendant argues that Plaintiff's Complaint did not allege a hostile work environment cause of action.  A review of the complaint reveals that Plaintiff did conflate all Title VII claims into one cause of action. (Doc. #1).  However, as noted by the Magistrate Judge in the Report, Plaintiff included allegations of racial slurs and further alleged "[t]hat as a direct and proximate result of the hostile work environment created by the racially charged atmosphere of her place of employment[,] Plaintiff has suffered damages." (Doc. #1-1 at ¶¶ 19, 25).  Accordingly, the Court finds a hostile work environment claim was sufficiently alleged in the Complaint.

judgment in favor of Defendant on that claim based on the issue of imputability of conduct to Defendant.  For the reasons articulated herein, Defendant's motion for summary judgment is denied as to Plaintiff's hostile work environment claim.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208 (4th Cir. 2016) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116–17 (2002)).  To survive summary judgment on her claim of a racially hostile work environment, a plaintiff must demonstrate that a reasonable jury could find: "there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."  Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 271 (4th Cir. 2015) (en banc) (internal quotations omitted) (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)).  A plaintiff asserting a hostile work environment claim "may not prevail absent sufficient evidence of a fourth element: that 'there is some basis for imposing liability' on the employer" for a supervisor's conduct.  Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001) (quoting Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998)).

The Report and Recommendation of the Magistrate Judge thoroughly outlines the allegations and arguments of the parties, and the recitation of Plaintiff's allegations in the Report are incorporated herein by reference.  Generally, as to the hostile work environment claim, Plaintiff alleges that her direct supervisor, Tammy Herring (hereinafter "Herring"), made offensive, racially based statements and otherwise behaved in a way sufficient to adversely affect or alter the conditions of Plaintiff's employment such that it created an abusive and hostile work environment. Plaintiff was employed with Defendant in various positions for almost seventeen years, beginning

4

in 1996.  (Doc. #25 at 2).  Over the more than four years of employment during which Herring was her direct supervisor, Plaintiff alleges that Herring forwarded "maybe less than ten" (10) emails to Plaintiff around the fall of 2009 that reflected African-American stereotypes.  (Doc. #20-2 at 25, Plaintiff Depo. ln. 15).  Plaintiff stated in her deposition that "two or three" of the forwarded emails involved references to "watermelon" and "fried chicken" and "one or two" emails referred to the White House as the "Black House" and referenced President Obama.  (Doc. #20-2 at 26 lns. 17-25, at 27 lns. 1, 11-18).  Plaintiff alleges that the emails were forwarded to her by Herring sometime after August 25, 2009.  (Doc. #20-2 at 29 lns. 11-23).  Plaintiff testified in her deposition that after receiving the forwarded emails from Herring, Plaintiff eventually approached Herring (her supervisor) directly and told Herring that she thought the emails were offensive.  (Doc. #20-2 at 30, 31).  After that interaction, the record reflects that Herring stopped forwarding Plaintiff emails unrelated to her work.  (Doc. #20-2 at 30, 31).  Further, Plaintiff stated in her deposition that she did not receive any offensive emails or forwards from Herring or any other employee or colleague after she told Herring she was offended.  (Doc. #20-2 at 32, lns. 9-15; Q: "Did you ever get any of those kinds of jokes, emails or things from Tammy ever again?" A: "I don't recall I did, no." Q: "Did you ever get any jokes, emails, or things of that nature from anyone else at Palmetto Health after that?" A: "No.")).

In addition to the offensive emails, Plaintiff asserts she overheard Herring refer to President Obama as a "monkey" when she saw him on the television.  (Doc. #20-2 at 32–33).  Plaintiff further alleges that Herring commented offensively about interracial couples and asked Plaintiff on one occasion why "people so black" get tattoos when you cannot see the tattoos on their skin. (Doc. #20-2 at 32–34).  Plaintiff admits in deposition testimony that she did not express to Herring that she was offended by any of Herring's other statements or actions other than the email

3:15-cv-01070-TLW     Date Filed 09/26/16     Entry Number 28     Page 6 of 13

forwards.  (Doc. #20-2 at 36).  Based primarily on the foregoing allegations, Plaintiff asserts a claim for hostile work environment against Defendant.

As an initial matter, this Court notes that it is undisputed that Herring's conduct and statements were both unwelcome and based on race.  Accordingly, the evaluation of Plaintiff's hostile work environment claim at this summary judgment stage focuses on the third and fourth elements: whether the alleged harassment was sufficiently severe or pervasive, and whether liability for Herring's conduct should be imputed to Defendant.

First, this Court agrees with the Magistrate Judge's legal analysis and recommendation with regard to the third element of Plaintiff's hostile work environment claim, which requires that the harassment be severe and pervasive.  In considering the totality of the circumstances and viewing the record evidence in the light most favorable to Plaintiff as the non-movant, an issue of material fact exists as to whether the conduct and statements of Herring were sufficiently "severe and pervasive" to constitute a hostile work environment under the standard set forth by case law and Title VII.  See Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208 (4th Cir. 2016) (citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001) (emphasizing that a district court must "take into account the totality of the circumstances" at this stage of the analysis)).  A reasonable jury could conclude that Herring's conduct was sufficiently severe and pervasive to create a hostile work environment for Plaintiff within the meaning of Title VII.

A number of Fourth Circuit cases support this analysis.  In connection with the "severe and pervasive" element of a hostile work environment claim, the Fourth Circuit has held:

> The degree of hostility or abuse to which [a plaintiff] was exposed can only be determined by examining the totality of the circumstances. Relevant considerations "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

3:15-cv-01070-TLW     Date Filed 09/26/16     Entry Number 28     Page 7 of 13

Spriggs, 242 F.3d at 184 (internal citations omitted) (quoting Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 183 (4th Cir. 1998)).  In addition, "[e]lement three of a hostile work environment claim requires a showing that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive'; the plaintiff may, but is not required to, establish that the environment is 'psychologically injurious.'"  Boyer-Liberto, 786 F.3d 264, 271 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993)).  "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'"  Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).  Thus, "to be actionable, the conduct must create an objectively hostile or abusive work environment and the victim must also perceive the environment to be abusive."  Spriggs, 242 F.3d at 184 (citing Lissau, 159 F.3d at 183). In other words, whether conduct is sufficiently severe and pervasive to constitute a hostile work environment involves consideration of the conduct from both an objective and subjective perspective.

Determining whether allegations create an environment that is objectively hostile "'is not, and by its nature cannot be, a mathematically precise test.'"  Boyer-Liberto, 786 F.3d at 276 (quoting Harris, 510 U.S. at 23).  The Fourth Circuit has instructed that "[i]n measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., 'a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.'" Id. at 278 (quoting Rodgers v. W.-S. Life Ins. Co., 12 F.3d 668, 667 (7th Cir. 1993)).  "Simply put, 'a supervisor's power and authority invests his or her harassing conduct with a particular threatening character.'"  Id. (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998)).

In analyzing both the objective and subjective prongs of the severe and pervasive aspect of a hostile work environment claim, Fourth Circuit Court of Appeals, sitting en banc, recently stated:

> We also grasp that the use of Clubb's chosen slur—"porch monkey"—is about as odious as the use of the word "n[****]r." See Spriggs, 242 F.3d at 185. The latter epithet, of course, "is pure anathema to African-Americans." Id. Similarly, describing an African-American as a "monkey," and thereby "suggest[ing] that a human being's physical appearance is essentially a caricature of a jungle beast[,] goes far beyond the merely unflattering; it is degrading and humiliating in the extreme." Id.; see also, e.g., Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 911 (8th Cir. 2006) (recognizing that "[p]rimate rhetoric has been used to intimidate African-Americans" and that "[t]he use of the term 'monkey' and other similar words," including the variation "porch monkey," has "been part of actionable racial harassment claims across the country"). As we and several of our sister courts of appeals have recognized, "'[p]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as "n[****]r" by a supervisor in the presence of his subordinates.'" Spriggs, 242 F.3d at 185 (quoting Rodgers, 12 F.3d at 675).

Boyer-Liberto, 786 F.3d at 280.

In the instant case, as noted, after careful review of the relevant pleadings, motions and memoranda of the parties, as well as the record in the case, the Court finds that there is a genuine issue of material fact regarding whether Herring's conduct, statements, behavior, and other harassment toward Plaintiff were sufficiently severe and pervasive to satisfy the third element of Plaintiff's hostile work environment claim. See generally Burgess v. Bowen, 466 F. App'x 272, 276 (4th Cir. 2012) ("It is not the district court's role to 'weigh the evidence and determine the truth of the matter' but instead to determine whether there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986))). In this case, Herring was Plaintiff's direct supervisor, Plaintiff has alleged several different incidents and repeated conduct—more than a discrete or isolated comment, and the allegations, if proven, present severe and offensive racial slurs and stereotypes. See generally Boyer-Liberto, 786 F.3d at 279–81. On the record before it, this Court finds that a jury could reasonably determine that the alleged statements and conduct by Herring were sufficiently severe and pervasive to constitute a hostile

work environment.

Next, this Court concludes that a genuine issue of material fact exists as to the fourth element of hostile work environment—whether Herring's actions are imputable to Defendant—which precludes summary judgment on Plaintiff's hostile work environment claim.  On that issue, this Court declines to accept the analysis and recommendation of the Magistrate Judge and instead finds that Plaintiff has presented "sufficient evidence of [the] fourth element [of hostile work environment]: that 'there is some basis for imposing liability' on [the Plaintiff's employer]." Spriggs, 242 F.3d at 184 (quoting Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998)).  Defendant argues that it is entitled to summary judgment based on the affirmative defense available to it based on the absence of a tangible employment action, such that Plaintiff may not impute liability for the actions of her supervisor.  See Faragher v. City of Boca Raton, 524 U.S. 775 (1998).  However, this Court concludes that a question of material fact exists regarding whether Defendant has sufficiently proven the defense available to it.

In the instant case, the Magistrate Judge determined in the Report and Recommendation that no tangible employment action was taken against Plaintiff as a result of the alleged hostile work environment.[3]  (Doc. #25 at 12).  Neither Plaintiff nor Defendant objected to that finding by the Magistrate Judge.  Thus, this Court accepts the finding that no tangible employment action was taken against Plaintiff by Herring in connection with the alleged hostile work environment.  Moreover, as discussed in the Report, an affirmative defense is available to an employer, such as the Defendant in the above-captioned case, who faces imputed liability for a claim of hostile work environment based on conduct by a supervisor in violation of Title VII, and in the absence of a

---

[3] "A 'tangible employment action' occurs whenever 'a significant change in employment status' is effected, 'such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Spriggs, 242 F.3d at 186 n.8 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

tangible employment action in connection with that conduct.  (Doc. #25 at 12–13).  In broad terms, the affirmative defense, also known as the Ellerth/Faragher defense, examines the reasonableness of the employer's conduct in seeking to prevent and correct harassing conduct and the reasonableness of the employee's conduct in seeking to avoid the harm by taking advantage of corrective opportunities offered by the employer.  The Fourth Circuit cases provide guidance in this area.  The Fourth Circuit Court of Appeals has explained:

> The standard for imposing liability is made more stringent by the availability of an affirmative defense.  The employer may escape liability if it can demonstrate, by a preponderance of the evidence, that (1) it "exercised reasonable care to prevent and correct promptly any harassing behavior"; and (2) the plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."

Spriggs, 242 F.3d at 186 (quoting Faragher, 524 U.S. 775, 807 (1998)).

"Where the harasser is [the plaintiff's] supervisor and no direct employment action has been taken, the victim is compelled by the Ellerth/Faragher defense to make an internal complaint, i.e., 'to take advantage of any preventive or corrective opportunities provided by the employer.'" Boyer-Liberto, 786 F.3d at 282 (quoting Faragher, 524 U.S. at 807).  The "defense, in essence, imposes a duty on the victim to report her supervisor's harassing behavior to the employer." Id. at 278; see also Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 267–68 (4th Cir. 2001) (discussing "employee's reporting requirement" under Faragher and Ellerth).

"The reporting obligation is essential to accomplishing Title VII's 'primary objective,' which is 'not to provide redress but to avoid harm.'" Id. (quoting Faragher, 524 U.S. at 807). Thus, the Fourth Circuit Court of Appeals has "recognized that the victim is commanded to 'report the misconduct, not investigate, gather evidence, and then approach company officials.'" Id. at 282–83 (quoting Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 269 (4th Cir. 2001)). "Further, [the Fourth Circuit has] emphasized that an employee's 'generalized fear of retaliation

does not excuse a failure to report . . . harassment,' particularly where 'Title VII expressly prohibits any retaliation against [the reporting employee].'"  Id. at 282 (quoting Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 267 (4th Cir. 2001)).

In the instant case, the Court finds that a genuine question of material fact exists as to whether Plaintiff may impute liability for Herring's conduct to the Defendant.  The record presents conflicting accounts regarding whether Plaintiff availed herself of the opportunities or policies provided to employees by Defendant to correct or prevent the harassing behavior or to otherwise avoid the harm.

Defendant argues it is entitled to summary judgment because Plaintiff has not shown that Herring's conduct was imputable to Defendant.  More specifically, Defendant contends, in connection with the affirmative defense, that Plaintiff failed to take advantage of the corrective opportunities provided by Defendant to prevent or correct harassment in the workplace.  (Doc. #20).  In its reply, Defendant submitted evidence of its internal policy against harassment.  (Doc. #24-1).  The Defendant's harassment policy includes specific steps for employees to report potential harassment in the workplace and discusses how Defendant as employer will handle and correct reports of harassment in the workplace.  (Doc. #24-1 at 1–2).  The policy sets forth a general policy statement that "workplace harassment of any kind by managers, supervisors, co-workers and non-employees . . . will not be tolerated."  (Doc. #24-1 at 1).  It also provides general guidance about harassment which states, among other things, that "ethnic or racial slurs and other verbal or physical conduct relating to a person's race, color, age, religion, gender, sex, disability or national original constitute harassment when they unreasonably interfere with the person's work performance or create an intimidating work environment."  (Doc. #24-1 at 1 ¶ 1).

11

The Magistrate Judge recommends that this Court grant summary judgment in favor of Defendant on Plaintiff's hostile work environment claim and dismiss the case because Plaintiff did not notify Defendant of Herring's conduct or show sufficient evidence that she otherwise took advantage of the corrective opportunities Defendant provided through its harassment policy, and therefore failed to demonstrate that Herring's conduct was imputable to Defendant. (Doc. #25 at 13-14). This Court concludes otherwise. As noted in the Report, Plaintiff asserts in the Complaint and other filings that she requested a transfer to another department based on the racial harassment, or that she spoke with Division Director Mariam Dicks in connection with Herring's racially charged statements and conduct. Further, the submitted deposition excerpts reflect that Plaintiff alleges that she contacted someone in Human Resources about Herring's offensive statements through fax or otherwise. (See Doc. #20-2 at 36). Plaintiff stated in her deposition that she "do[es] remember later on [she] spoke to the Human Resources person about the comments and sent him a fax concerning the racist comments." (Doc. #20-2 at 36; lns. 8-10). More specifically, the submitted excerpts of Plaintiff's deposition demonstrate Plaintiff contacted Human Resources:

> Q: Who was this [in Human Resources]?
> Plaintiff A: Randy Branham, but he said he never received that information from me.
> Q: What is it you sent him?
> Plaintiff A: I sent him a fax concerning different things that I was experiencing in the office and why I felt like I could never – I could no longer work there or be productive. I have a copy and I – I'm pretty sure Mr. Henry submitted it – that – a copy of the fax that I sent him concerning the racist comments and the harassment that I – the stressful conditions that I was working under.

(Doc. #20-2 at 36 lns. 11-22).

Moreover, in light of the conflicting evidenced cited by the parties above, there are issues of fact as to: (1) whether or not Defendant was ever notified by Plaintiff or any other employee of a concern about Herring's offensive conduct or statements, (2) whether Plaintiff put Defendant on

notice of the harassment by Herring (and specifically, whether she requested a transfer due to the harassing conduct), (3) whether Defendant had the opportunity to prevent and correct any harassing behavior, and if it did, (4) whether Defendant failed to promptly address or otherwise correct the harassment. The foregoing are unresolved questions of material fact. The resolution of each of these issues has the potential to affect whether liability for Herring's conduct should be imputed to Defendant.

Accordingly, after careful review of the record, and in light of the conflicting factual assertions by the parties, this Court cannot conclude that Defendant is entitled to judgment as a matter of law based on the Ellerth/Faragher defense that would preclude imputing liability to Defendant.

## CONCLUSION

Accordingly, questions of fact regarding the third (severe and pervasive) and fourth (imputed liability) elements of Plaintiff's hostile work environment claim preclude the grant of summary judgment. After careful de novo review, **IT IS ORDERED** that the Report and Recommendation (Doc. #25) is **ACCEPTED** in part. Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. #20) is **GRANTED IN PART** and **DENIED IN PART**, as explained herein. Specifically, Defendant's motion is **GRANTED** as to Plaintiff's: (1) claim for wrongful discharge in violation of Title VII; and (2) claim for intentional infliction of emotional distress. Defendant's motion is **DENIED** as to Plaintiff's claim for hostile work environment in violation of Title VII. (Doc. #20).

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
TERRY L. WOOTEN
Chief United States District Judge

September 26, 2016
Columbia, South Carolina

13